IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO.: 5:21-cv-69

TAILORED CHEMICAL
PRODUCTS, INC.

          Plaintiff,

     v.

DAFCO INC., ANDERSON FAMILY
PROPERTIES, LLC, PERRY R.
KEISTER, ELIZABETH B. KEISTER,
DONALD E. BARRIER II, ECO-
TOTE CONTAINER SERVICES,
LLC, THOMAS J. MCKITTRICK,
BRENNTAG MID-SOUTH, INC.,
KISER-SAWMILLS, INC and
CENTER FOR APPLIED
RENEWABLE RESOURCES AND
ENERGY INC.

          Defendants.

**COMPLAINT**
(Jury Trial)

     NOW COMES the Plaintiff, by and through counsel, complaining of the

Defendants and alleging and saying as follows:

## JURISDICTION

1.    Plaintiff Tailored Chemical Products, Inc. ("Tailored Chemical") is a North

    Carolina corporation with its principal place of business in Catawba County,

    North Carolina.

2.     Defendant DAFCO Inc. ("DAFCO") was a North Carolina corporation with its principal place of business in Caldwell County, North Carolina.

3.     Defendant Anderson Family Properties, LLC ("Anderson") is a North Carolina limited liability company with its principal place of business in Caldwell County, North Carolina.

4.     Upon information and belief, Defendant Perry R. Keister is a citizen and resident of Caldwell County, North Carolina.

5.     Upon information and belief, Defendant Elizabeth B. Keister is a citizen and resident of Caldwell County, North Carolina.

6.     Upon information and belief, Defendant Donald E. Barrier, II, is a citizen and resident of Buncombe County, North Carolina.

7.     Defendant Eco-Tote Container Services, LLC ("Eco-Tote") was a North Carolina Limited Liability Company owned by Defendant Thomas J. McKittrick.

8.     Defendant McKittrick was a managing member of Defendant Eco-Tote.

9.     Upon information and belief, Defendant Eco-Tote and Defendant McKittrick were and are residents of Mecklenburg County, North Carolina.

10.    Defendant Brenntag Mid-South, Inc., is a corporation organized under the laws of the State of Kentucky with an office and place of business in Henderson County, Kentucky.

11. Defendant Kiser-sawmills, Inc. ("Kiser Sawmills") is a corporation organized under the laws of the State of North Carolina with an office and place of business in Hudson, Caldwell County, North Carolina.

12. Defendant Center for Applied Renewable Resources and Energy Inc. was a corporation organized under the laws of the State of North Carolina.

13. Upon information and belief, Defendant Perry R. Keister owned or operated DAFCO and the Center for Applied Renewable Resources and Energy.

14. Upon information and belief, Defendant Donald E. Barrier was also an operator of DAFCO and the Center for Applied Renewable Resources and Energy.

## JURISDICTION AND VENUE

15. This is an action for Cost Recovery and Contribution under 42 U.S.C. §§ 9607 and 9613 of the Comprehensive Environmental Response, Cost Recovery and Liability Act ("CERCLA"). This Court has subject matter jurisdiction based upon CERCLA, 42 U.S.C. §§ 9607 and 9613; and the existence of a federal question, 28 U.S.C. § 1331.

16. This Court has supplemental jurisdiction over the state law claims based on 28 U.S.C. § 1367, said claims being so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

17. Additionally, this Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 9613(g)(2).

18. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395, because the damages incurred and to be incurred by Plaintiff giving rise to the claims in this action occurred in this district and the Site is located in this district.

19. Pursuant to 42 U.S.C. § 9613 (b), the United States District Courts shall have original jurisdiction over all controversies arising under CERCLA without regard to the citizenship of the parties or the amount in controversy.

## FACTS

20. Since 1977, Tailored Chemical has manufactured adhesives including hot melts, water based glues, emulsion polymers, mastics, synthetic resins and other specialty chemicals for sale and distribution to its customers.

21. Tailored Chemical has operated and operates multiple facilities in Catawba County, including one in the Town of Longview.

22. Tailored Chemical currently operates three plants in the Town of Hickory.

23. In the course of manufacturing adhesives, Tailored Chemical generates wastewater.  The wastewater is not characterized as hazardous waste.

24. In 2009, Tailored Chemical hired Perry Keister, who operated DAFCO, to design and install a system to pretreat industrial wastewater from Tailored Chemical's Longview plant before discharging to the Town of Longview sewer system.

25. Perry Keister held himself out as an expert in the treatment of industrial wastewater.

26. Perry Keister designed and supervised the installation of a pretreatment system to pretreat industrial wastewater at the Longview plant before discharging to the Town of Longview sewer system.

27. In 2009, Tailored Chemical sued the Town of Longview because the town cut off Tailored Chemical's access to the public sewer.

28. As a result of the litigation, Tailored Chemical's access to the sewer system was restored, and the Town of Longview published an apology to Tailored Chemical.

29. Perry Keister testified as an expert witness in the litigation against the Town of Longview. A copy of Mr. Keister's resume and report are attached hereto as Exhibit A.

30. Some of the wastewater generated at the Tailored Chemical plants has been and is being discharged to the Town of Hickory Sewer System.

31.    Some of the wastewater generated at the Tailored Chemical plants was placed in 275 gallon totes to be shipped off-site for treatment and cleaning of the totes for reuse.

32.    At all relevant times, Perry Keister, Don Barrier and DAFCO held themselves out as experts in the treatment of industrial wastewater.

33.    In 2010, Perry Keister proposed to Tailored Chemical that he and DAFCO could haul the wastewater totes from Tailored Chemical off-site, the wastewater could be treated, the 275 gallon totes washed and returned to Tailored Chemical for reuse.

34.    In response to the proposal from Perry Keister and DAFCO, Tailored Chemical entered into an agreement with Perry Keister and DAFCO wherein Tailored Chemical would pick up totes at Tailored Chemical's facilities, transport the totes off-site, treat the wastewater in the totes, clean the totes and return the washed totes to Tailored Chemical for reuse.

35.    Perry Keister, Don Barrier and Elizabeth Keister, Perry Keister's daughter, owned and operated DAFCO and related companies, including the Center for Applied Renewable Resources and Energy, Inc. and Impleterra, LLC.  In the course of operating these businesses, Perry Keister and Don Barrier were actively involved in the transport treatment and disposal of wastewater, and

washing of totes and were in close communication with the plaintiff regarding the same.

36. On information and belief, DAFCO, the Center for Applied Renewable Resources and Energy and Impleterra, LLC, leased a facility on Virginia Avenue in Lenoir, North Carolina from Kiser Sawmills (the "Virginia Avenue Site").

37. Perry Keister, DAFCO, Don Barrier and others treated some wastewater and washed some totes at the Virginia Avenue Site.

38. Perry Keister, DAFCO, Don Barrier and others simply stored most of the 275 gallon totes at the Virginia Avenue Site.

39. From 2011 through early 2015, Tailored Chemical shipped totes with wastewater and totes to be cleaned to DAFCO and at times to Don Barrier.

40. Tailored Chemical paid DAFCO $ 0.15 per gallon to treat the wastewater in the totes.

41. Tailored Chemical paid DAFCO $43.00 per tote for all totes cleaned and delivered from DAFCO.

42. From December, 2014, through February, 2016, Tailored Chemical paid DAFCO $155,165.82 for processing wastewater and cleaning and returning totes.

43.   On information and belief, DAFCO accepted wastewater totes from other companies for processing and treatment.

44.   Because it failed to pay rent on its Virginia Avenue location in Lenoir, DAFCO was evicted by its landlord, Kiser Sawmills, from that location in early 2015.

45.   In 2015 and to the present, Anderson owned approximately 25 acres of land located at 2698 Hickory Boulevard in Hudson, North Carolina. The property includes a 65,000 sq. foot Aluminum building with garage bays and loading docks.

46.   On February 1, 2015, Anderson leased a portion of its property (the "Site"), to DAFCO for the processing and storage of material in the totes and collected rent from DAFCO.

47.   Beginning in early 2015 until February 2016 DAFCO's former landlord, Kiser Sawmills, transported totes containing wastewater from Tailored Chemical to the Site.

48.   Pursuant to instructions from DAFCO in early 2015, Tailored Chemical began sending its wastewater totes to the Site. The totes were sent to DAFCO and, in some cases, to Don Barrier.

49.   DAFCO was administratively suspended by the North Carolina Secretary of State in October of 2015.

50. Eco-Tote was formed in January, 2016 by Tom McKittrick.

51. In March 2016, DAFCO entered into an Asset Purchase Agreement with Eco-Tote. Under this agreement, Eco-Tote took over operation of the Site.

52. Eco-Tote owned a site and facility in Charlotte, North Carolina ("the Charlotte Property").

53. Pursuant to instructions from DAFCO and Eco-Tote in March 2016, Tailored Chemical began sending its wastewater totes to Eco-Tote at the Site.

54. Beginning in April 2016, Tailored Chemical began shipping totes to Eco-Totes' Charlotte Property.

55. Eco-Tote transported approximately 1,000 of the Tailored Chemical totes to the Charlotte Property in April 2016.

56. Eco-Tote filed articles of dissolution with the North Carolina Secretary of State in May 2018. Eco-Tote gave no notice of its dissolution to Tailored Chemical.

57. DAFCO failed to treat all the wastewater in totes shipped to it by Tailored Chemical and failed to clean and return totes.

58. DAFCO and Eco-Tote abandoned the totes delivered to them by Tailored Chemical and others on the Site.

59. Perry Keister and Don Barrier, in their operation of DAFCO, dominated and controlled its operations. In dominating and controlling its operations and storing and abandoning thousands of 275 gallon totes of untreated wastewater at the Site, Keister and Barrier perpetrated violations of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C §9601 *et. seq*. ("CERCLA"). The CERCLA violations resulted in damage to Tailored Chemical.

60. Tom McKittrick, in his operation of Eco-Tote, dominated and controlled its operations. In dominating and controlling its operations and storing and abandoning thousands of 275 gallon totes of untreated wastewater at the Site, McKittrick perpetrated violations of CERCLA. The CERCLA violations resulted in damage to Tailored Chemical.

61. Under the terms of the Agreement with Tailored Chemical, Perry Keister and Don Barrier had a duty to properly transport, treat and dispose of wastewater in the 275 gallon totes. Keister and Barrier were further required to clean and wash the totes and return them to Tailored Chemical.

62. Perry Keister and Donald Barrier held themselves out as knowledgeable in the transport, treatment and disposal of industrial wastewater. In fact, on his resume, Perry Keister stated he had "…a flair for treating industrial

wastewater."[1]  As such Kiester and Barrier had a duty to properly transport, treat and dispose of wastewater in the 275 gallon totes in accordance with applicable law and regulation.  Instead, they simply abandoned thousands of untreated totes at the Site.  Keister and Barrier failed to treat wastewater in totes shipped to DAFCO, failed to clean and return totes and abandoned totes from Tailored Chemical and others at the Site, all in violation of applicable law and regulation.

63.  Tom McKittrick held himself out as knowledgeable in the transport, treatment and disposal industrial.  As such, McKittrick had a duty to properly transport, treat and disposed of wastewater in the 275 gallon totes in accordance with applicable law and regulation.

64.  Tom McKittrick failed to treat wastewater shipped to Eco-Tote at the Site, failed to clean and return totes and abandoned untreated totes at the Site, all in violation of applicable law and regulation.

65.  Anderson Family Properties sued Tailored Chemical in 2017 in state court in Caldwell County, *Anderson Family Properties, LLC v. Tailored Chemical Products, Inc.*, file number 17-CVS-592 regarding the abandoned totes.  A copy of the Complaint is attached hereto as Exhibit B.

---

[1] See resume of Perry Keister attached as Exhibit A.

66. In the lawsuit, Anderson Family Properties sought a mandatory injunction requiring Tailored Chemical to remove its totes from the Site and for an award of damages as result of the continuing trespass. [Exhibit B, page 2]

67. The Complaint is verified by Dandridge E. Anderson, Managing Member for Anderson Family Properties. [Exhibit B, page 3]

68. The case was heard by Judge Eric Levinson in June 2018. Following the hearing, Judge Levinson entered an Order with Findings of Fact and Conclusions of Law on August 23, 2018, which was filed on September 4, 2018.

69. A copy of the Order is attached to the Complaint as Exhibit C and incorporated herein by reference.

70. On May 10, 2018, the City of Hudson Fire Chief reported to United States Environmental Protection Agency's ("EPA") Region 4 National Response Center (NRC) there were many 275-gallon totes, abandoned at the Site and many of the totes appeared to be leaking.

71. On May 11, 2018, in response to the NRC report, an EPA Region 4 On-Scene Coordinator ("OSC"), Ken Rhame, was mobilized to the Site to determine whether an emergency response action was necessary. The OSC arrived on-site and observed approximately 9,000 totes and less than 50 other containers of various sizes.

72.   On May 31, 2018, the North Carolina Department of Environmental Quality's ("DEQ") Solid Waste Program issued a Notice of Violation ("NOV") to Anderson Family Properties and Tailored Chemical for violations of the State Resource Conservation and Recovery Act (RCRA) Hazardous Waste Program under the Solid Waste Management Act (Act). The NOV required an assessment and inventory of the contents of the containers identified as industrial process wastewater abandoned on the property and specified that a plan of action would need to be approved prior to any waste being removed from the Site.

73.   On September 6, 2018, Tailored Chemical submitted a plan for sampling totes at the Site to NCDEQ, however, the Solid Waste Program determined the plan did not adequately address the requirements in the NOV.

74.   On January 24, 2019, the Solid Waste Program of DEQ received analytical data for a composite sample from some of the totes at the Site which identified the presence of Tetrachloroethene (PCE) at 2.07 mg/l, which exceeds the RCRA regulatory level of 0.7 mg/l for Toxicity Characteristic and indicated that the containers of wastewater are a Toxicity Characteristic hazardous waste under RCRA (EPA Waste Code: D039).

75.   The contamination found at the Site is considered a "hazardous substance" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

76. In April 2019, the Site was referred to EPA Region 4 to conduct a removal site evaluation.

77. On April 5, 2019, Anderson Family Properties and Tailored Chemical agreed, at the request of EPA, to conduct an emergency removal action of the totes.

78. In early 2019, a removal contractor, STAT, Inc., was retained to analyze and dispose of the material in the totes at the Site.

79. Anderson acknowledged, through counsel, that Anderson owed at least 1/3 of STAT's services through the early part of 2019.

80. In May 2019, Tailored Chemical, at the request of EPA, entered into an Administrative Settlement Agreement and Order on Consent ("AOC") for Removal Action with EPA regarding the site. A copy of the AOC is attached hereto and incorporated herein by reference as Exhibit D.

81. Anderson refused to sign the AOC and has refused to pay for any of the removal costs incurred since May 2019.

82. In April 2019, Tailored Chemical and its contractors began the process of bulking and analyzing wastewater and solids in the abandoned totes at the DAFCO site.

83. Tailored Chemical's contractors' completed the work at the Site by March 2020.

84. On April 21, 2020, Tailored Chemical submitted a Final Report to EPA regarding the work at the Site. The Final Report has been received and approved by EPA. A copy of the Final Report (without appendices) is attached hereto and incorporated herein as Exhibit E.

85. In the course of analyzing and removing material from the Site, Tailored Chemical has identified totes which contain materials that came from other facilities, including the Marlin Company, 1333 Virginia Street, Lenoir, N.C. 28645.

86. The Marlin Company merged with Brenntag Mid-South, Inc. in June, 2019. The surviving company is called Brenntag Mid-South ("Brenntag").

87. Brenntag knew or should have known that waste generated by it was sent to the Site and was being stored at the Site.

88. In the course of removing and analyzing material in totes at the site, Tailored Chemical identified petroleum containing materials which did not originate from Tailored Chemical but are stored in totes with Tailored Chemical labels.

89. On information and belief, DAFCO, the Keisters, Don Barrier, Anderson and perhaps, others, accepted for treatment waste material from other facilities, including Brenntag and Kiser Sawmills, and stored the material at the Site.

90.     The actions taken by Plaintiff in connection with the Site constitute "response" actions within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

91.     In connection with Plaintiff's response actions, Plaintiff has incurred costs necessary and consistent with the National Contingency Plan ("NCP") which was promulgated under section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is codified at 40 C.F.R. part 300, et seq.

92.     Tailored Chemicals has incurred response costs ("Response Costs") in excess of $7,000,000 including costs for removal and/or remedial actions as defined in Section 101(23)-(25) of CERCLA, 42 U.S.C. § 9601(23)-(25).

93.     Such Response Costs were necessary and consistent with the National Contingency Plan.

94.     Such Response Costs were in excess of Tailored Chemical's equitable shares, within the meaning of 42 U.S.C. § 9613(f).

95.     Tailored Chemicals has acted responsibly to remedy a situation that it did not create and should not have been forced to remedy.

**<u>First Cause of Action</u>**
**<u>CERCLA Cost Recovery under Section 107(a)(l)</u>**

96.     Tailored Chemicals realleges and reincorporates by reference paragraphs 1 - 96.

97.    The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

98.    "Hazardous substances" within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including of Tetrachloroethene (PCE) were disposed, placed or otherwise became located at the Site at times relevant to this action.

99.    There have been "releases" within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances into the environment at or from the Site at times relevant to this action.

100.   The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

101.   Defendants are each considered a "person" liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a).

102.   Anderson is a person who owns the Site and is liable under CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

103.   Anderson, DAFCO, Eco-Tote, and McKittrick are persons who at the time of disposal of a hazardous substance owned and/or operated property at which hazardous wastes have come to be disposed of and released. Therefore, Anderson, DAFCO, Eco-Tote, and McKittrick are liable under CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

104.  DAFCO Inc., Anderson Family Properties, LLC, Perry R. Keister, Elizabeth B. Keister & Donald E. Barrier II, Eco-Tote, Thomas McKittrick, Brenntag Mid-South and Kiser-Sawmills, are persons who accepted hazardous substances for transport to disposal at the Site, or transported hazardous substances to the Site, which Site was selected by such persons, at which hazardous wastes have come to be disposed of and released.  Therefore, these Defendants are liable under CERCLA Section 107(a)(4), 42 U.S.C. § 9607(a)(4).

105.  Under CERCLA Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), Tailored Chemicals is entitled to cost recovery from Defendants for the Response Costs incurred by Plaintiff.

106.  Defendants are jointly and severally liable to Tailored Chemicals for this claim.

**Second Cause of Action**
**Contribution Claim Under Section 113 of CERCLA**

107.  The allegations of Paragraphs 1-107 of the Complaint are realleged and incorporated herein by reference.

108.  Under CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), Tailored Chemical is entitled to contribution from all Defendants for response costs incurred in connection with the removal action incurred by Tailored

Chemicals using such equitable factors as the Court determines are appropriate.

109. Under 42 U.S.C. § 9613 (f), Tailored Chemical has a right of contribution against persons liable or potentially liable under 42 U.S.C. § 9607 (a) for the Response Costs incurred by Tailored Chemicals using such equitable factors as the Court determines are appropriate.

110. Pursuant to 42 U.S.C. § 9613 (f), Tailored Chemical seeks contribution from all of the named Defendants in this action.

**Third Cause of Action**
**CERCLA Declaratory Judgment**

111. Tailored Chemicals realleges and reincorporates by reference the foregoing paragraphs as if fully set forth herein.

112. An actual controversy exists, within the meaning of 28 U.S.C. §2201 and CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), between Tailored Chemicals and Defendants with respect to their respective rights and responsibilities for the response costs incurred as alleged above.

113. Tailored Chemicals is entitled to a declaratory judgment on liability for response costs that will be binding in any subsequent action or actions to recover further response costs and which declares that the Defendants are liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), and/or CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), for all or their proper share

of response costs incurred by Tailored Chemicals with respect to the Contamination at the Site, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202.

## Fourth Cause of Action
## Breach of Contract

114.  Tailored Chemicals realleges and reincorporates by reference the foregoing paragraphs as if fully set forth herein.

115.  Tailored Chemical contracted with DAFCO, Inc., to process its wastewater and to clean and return totes to Tailored Chemical in Hickory.

116.  DAFCO failed to complete its obligations to Tailored Chemical under the contract in that DAFCO failed to process wastewater, failed to clean and return totes and abandoned totes from Tailored Chemical at the Hudson Site.

117.  In March 2016, DAFCO sold all its assets including the contract with Tailored Chemical to Eco-Tote.

118.  Pursuant to its contract with DAFCO and instructions from Eco-Tote and DAFCO, Tailored Chemical sent totes to Eco-Tote at the Site and later to Eco-Totes' facility in Charlotte.

119.  Eco-Tote failed to complete its obligations to Tailored Chemical in that Eco-Tote failed to process wastewater, failed to clean and return totes and abandoned totes at the Hudson Site.

120.  Eco-Tote did not send its notice of dissolution to Tailored Chemicals.

121. Eco-Tote did not provide a notice of claims pursuant to N.C.G.S. § 55-14-06.

122. Upon information and belief, Eco-Tote distributed assets in liquidation to Tom McKittrick and possible others.

123. Under North Carolina law, the rights and obligations of dissolved corporations and limited liability companies devolve upon the owners.

124. As a result of the failure of DAFCO and Eco-Tote, and their successors to complete contractual obligations to Tailored Chemical, Tailored Chemical has incurred damages in excess of $7 million dollars. Tailored Chemical is entitled to recover damages for breach of contract from DAFCO, Perry Keister, Elizabeth Keister, Don Barrier, Eco-Tote and Thomas J. McKittrick.

WHEREFORE, Plaintiff respectfully prays the Court as follows:

1. Enter a judgment pursuant to 42 U.S.C. Section 9613 (f) against all the named Defendants in this action, finding that Plaintiff is entitled to cost recovery and/or contribution from Defendants for all response costs incurred by Plaintiff;

2. Enter a judgment under 42 U.S.C. §§ 9607(a)(4)(B) and 9613(f) against Defendants, finding that Tailored Chemicals is entitled to cost recovery and/or contribution from Defendants for the Response Costs incurred by Tailored Chemicals, and to an allocation by the Court of the response costs

as between Tailored Chemicals and Defendants using such equitable factors as the Court determines are appropriate.

3.  Enter a declaratory judgment against Defendants that Tailored Chemicals is entitled to cost recovery and/or contribution from Defendants for the response costs incurred by Tailored Chemicals and to an allocation by the Court of the response costs as between Dixon Lumber and Defendant using such equitable factors as the Court determines are appropriate.

4.  For Judgment against the Defendants DAFCO, Keister and Barrier for breach of contract.

5.  For the costs incurred by the Plaintiff in preparing and prosecuting this action.

6.  For Trial by jury.

7.  For prejudgment interest and costs of this action.

8.  For such other and further relief as to the Court may seem just and proper.


This 3rd day of May, 2021.

ROBERTS & STEVENS, P.A.


By:    s/ William Clarke
       WILLIAM CLARKE
       State Bar No.: 10278
       ANN-PATTON HORNTHAL
       State Bar No.: 35477
       *Attorneys for Plaintiff*
       Post Office Box 7647
       Asheville, NC  28802
       (828) 252-6600